UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LARRY DEAN ROLLINS, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | ) 2:12-cv-00126-NT |
| | ) |
| NURSE PRACTITIOINER LINDA | ) |
| WENTWORTH, et al., | ) |
| | ) |
|     Defendants | ) |

**RECOMMENDED DECISION**

Larry Dean Rollins, currently an inmate at the Maine State Prison, has sued two nurses employed by Crisis and Counseling Center, Inc. to provide medical services to inmates at a regional jail, alleging that the nurses were deliberately indifferent to his serious medical needs when he was incarcerated at the Two Bridges Regional Jail as a pretrial detainee.[1] The nurse defendants in this action, Barbara Hackett and Linda Wentworth, have moved for summary judgment (ECF No. 45). Embedded within Rollins's response to the motion is his own cross-motion for summary judgment against the nurses (ECF No. 50). Both motions have been referred to me pursuant to 28 U.S.C. § 636(b). Rollins has also filed an additional motion for partial summary judgment against Wentworth, Hackett, and their employer, Crisis and Counseling Centers, Inc. (ECF No. 70), seeking partial summary judgment on the same issues related to medical treatment. I have delayed further response to that motion because every pleading filed in this case seems to unleash an endless volley of responses, replies, and counter

---

[1] Given Rollins's historical record with this court, including his prior litigation, it seems likely that Rollins was incarcerated on a motion for probation revocation at the time in question. He refers to himself as a pretrial detainee. His prior conviction for gross sexual assault is mentioned in this record and Rollins also refers to his "offense of conviction." It does not appear he was a pretrial detainee in the traditional sense.

motions without getting any closer to resolution of the core dispositive issue raised by defendants' initial motion for summary judgment. Although Rollins styles his pleadings as cross-motions for summary judgment or partial summary judgment, they also appear to be vehicles for a continuation of his arguments as to why summary judgment should not enter in favor of the defendants. I now recommend that both of Rollins's summary judgment motions be denied because they do not comply with Local Rule 56 and because they do not establish that Rollins is entitled to judgment as a matter of law. I further recommend that the defendants' motion be granted because on this record it is impossible to infer that the occasional deprivation of Norvir or its substitution with a drug called Norvair during the two-month window of incarceration at the regional jail was or is the cause of either the acute kidney injury or the chronic kidney disease Rollins has developed.

## FACTS

For purposes of summary judgment, in this District the facts of the case are established by means of competing statements of material facts which must be supported with citations to evidentiary sources. D. Me. Loc. R. 56(b), (c); Fed. R. Civ. P. 56(c)(1)(A). Rollins has failed to comply fully with the requirements of the Local Rule and as a result it is difficult to ascertain where the facts and evidence in opposition to defendants' motion and in support of Rollins's cross motions are located. However, the relevant pleadings are the following:

    1.) Defendants' Statement of Material Facts (ECF No. 46);

    2.) Plaintiff's Response to Statement of Fact (ECF No. 55); and

    3.) Plaintiff's Supplemental Response to Statement of Fact (ECF No. 72).

Additionally, Rollins filed a sworn declaration in support of his own cross-motion for summary judgment (ECF No. 70-1) which is not technically part of the pleadings on the defendants'

motion, but which I have considered in formulating this recommendation because it sheds considerable light on Rollins's theory of his own case.

The evidentiary sources for Rollins's various pleadings are more difficult to locate. In a supplemental response to the defendants' motion for summary judgment, Rollins provided some additional evidentiary sources. (ECF No. 71.) He also filed some additional evidentiary sources without any rhyme or reason (ECF No. 48), but I indicated that to the extent Rollins mentioned those documents in his response to the defendants' statement of material facts I would try to cross reference the exhibits on the docket (ECF No. 58). According to the defendants' explanation, which seems logical to me, Rollins's initial response to the statement of material facts (ECF No. 55) was actually his response to Defendants' Second Request for Admissions, a document appropriately never filed with this court by the defendants. (See Defendants' Reply at 1 n.1, ECF No. 59.) I accept the logic of that explanation because the document consists of twenty-four responsive paragraphs and the defendants' actual statement of material fact consists of only thirteen paragraphs. Additionally, plaintiff as much as acknowledged (ECF No. 65) he did not understand his obligation to file a paragraph-by-paragraph response to the defendants' statement of material fact. Over the defendants' objection I granted Rollins a mulligan and his do-over is found in the supplemental response (ECF No. 72) which actually does track the defendants' statement of material fact. I have primarily considered that document in formulating this recommended decision.

### Defendants' Statement of Material Facts

Defendants' statement of material facts relies primarily upon the deposition testimony of Rollins. All of Rollins's claims against defendants Barbara Hackett and Linda Wentworth are based on conduct that Rollins alleges occurred during his incarceration at the Two Bridges

Regional Jail in May and June 2010. When Rollins was incarcerated at the jail he had a valid prescription for the HIV medication Norvir that came with him from his earlier incarceration at the Kennebec County Jail. Rollins claims that defendants Hackett and Wentworth deprived him, at times, of his prescription drug Norvir. He says Hackett and Wentworth criticized him and treated him poorly because he was incarcerated for Gross Sexual Assault. Plaintiff claims defendants Hackett and Wentworth were prejudiced against him because of the crime of which he was convicted and for which he was incarcerated. According to Rollins, defendant Hackett acted viciously towards him based on this prejudice and she deprived him of his medications because of her viciousness.

Rollins claims he was deprived of other medications, but he cannot name any of them. He could live without all his medications except Norvir; the important medication to him was Norvir. The harm that Rollins claims resulted from the conduct of defendants Barbara Hackett and Linda Wentworth is an acute kidney injury. Rollins claims he currently has chronic kidney disease that places him at a high risk of suffering a heart attack and stroke. Rollins claims the chronic kidney disease he currently has resulted from the acute kidney injury.[2] Rollins says defendants Hackett and Wentworth contributed to his chronic kidney disease by initiating the whole problem. Plaintiff does not claim that he was deprived of Norvir completely while he was incarcerated at the jail. Rather, he claims there were times when he did not receive it. (See Rollins Dep. at 16, ECF No. 46-1 (Page ID # 173).)

---

[2] Rollins says a treating physician told him that the nurses' practice of administering his medication haphazardly caused the acute kidney injury which in turn led to the long term kidney damage. The discharge summary contains no such information and Rollins's report of what a physician allegedly said is inadmissible hearsay.

4

**Plaintiff's Opposing Statements of Material Fact**

Plaintiff does not refute the defendants' contention that this lawsuit directly relates to Hackett and Wentworth's actions in the May-June 2010 time frame. He does note however that his grievances went unresponded to and that when he returned to the regional jail in March 2012 he reiterated his grievance regarding the medical care he had received. (ECF No. 1-4, Page ID # 19.) Rollins's current position, which is stated quite forcefully in a number of different pleadings, is that while he was at Two Bridges Regional Jail, for over fifty some days in May and June 2010, he never had a valid prescription nor received any Norvir, the drug he previously received in connection with his HIV therapy. According to Rollins, his medical records from the regional jail demonstrate that someone replaced his Norvir prescription with "a false medication order for med: Norvair 100 mg." In support of this allegation Rollins cites medical records apparently BATES stamped H-W 086, 085, 073. He maintains these medical records are "lawfully" before the court and they well may be among the hundreds of pages of documents that have been filed with the court, but they are not "lawfully" before the court on this summary judgment record. I could not locate these medical records in the mishmash of exhibits offered at ECF No. 48 nor could I locate them in conjunction with any of the summary judgment filings.

Rollins also disputes, via his own affidavits, the defendants' statement regarding his need for other medications and the fact that he said he could live without all his medications except Norvir. Rollins notes that all of his medications are important and were prescribed as part of his HIV regimen. By affidavit, Rollins maintains that he considered all of his properly prescribed medications to be equally important. He continues to believe he was deprived of Norvir completely while at Two Bridges Regional Jail because he has learned through discovery that his

medical records show that the entire time he was incarcerated at the regional jail the prescription he received was for "Norvair."

### Other Material Facts on the Docket
### (not directly part of the summary judgment record)

Certain background facts appear scattered across this docket that help to put the claimed factual disputes in perspective. In their motion to stay the deadline to file objections to Rollins's motion for partial summary judgment defendants explain that Rollins was not completely deprived of Norvir as he now maintains. (ECF No. 73 at 2, n.1.) They ask the Court to take judicial notice that Norvir is a registered trademark of Abbott Laboratories and is the trade name for Ritonavir, a drug prescribed for people with HIV. They assert there is no drug known as Norvair and a "Google" search on my part likewise was unable to locate such a drug, although it did reveal that Norvir was a trademark name for ritonavir, a drug identified in Rollins's own medical record exhibits. Defendants maintain that, at worst, Plaintiff's medical records may have contained a typographical error whereby Norvir was mistakenly referred to as Norvair.

There also appears to be solid evidentiary support, albeit not presented in a very coherent fashion, for the fact that Rollins went from Two Bridges Regional Jail to Maine Medical Center with an acute kidney injury on June 11, 2010. The discharge summary is set forth below and is instructive regarding the issues raised in this case:

> Potential renal etiology included antiviral medication versus human immunodeficiency virus versus hypertension. Kidney biopsy was performed on 06/15 revealing acute interstitial nephritis with extensive fibrosis, but some preservation of glomeruli. Effects were deemed to be reversible if affecting agent was discontinued. Patient was started on 60 mg Prednisone on 06/17 for 4 to 6 week course with discontinuation to be discussed with Nephrologist. Infectious disease consult was called to discuss altering antiviral regimen as Tenofavir and Ritonavir have been documented to cause renal side effects. Infectious Disease felt that acute interstitial nephritis was likely due to antiviral regimen and recommended discontinuation of antivirals with follow up at Virology Treatment Center. Patient was restarted on bactrim on 06/22 for prophylaxis prior to

>  discharge and creatinine continued to decrease. Patient's Iisinopril and metformin were discontinued. Patient showed progressively declining creatinine after anti-viral therapy was discontinued. Patient will follow up on 07/07 at Virology Treatment Center to initiate new anti-viral regimen without renal side effects. Discharge creatinine was 6.89.

(ECF Nos. 70-3, Page ID # 301.)

Rollins's own exhibits and prior conduct suggest that at some point he was very much aware that Norvir might have been the cause of his renal injury. On July 17, 2010, he refused to take Norvir, because he believed it causes kidney failure. (ECF No. 55-4.) Rollins also submitted an exhibit dated August 11, 2010, indicating that at that point in time he was no longer taking Norvir due to a concern for nephrotoxicity. (ECF No. 48-8.) Of course, the actual record before the court is silent about what caused the acute kidney injury or the long-term kidney disease, Norvir itself, a carelessly or deliberately substituted drug named Norvair, or the administration of Norvir in a haphazard fashion by Hackett and Wentworth.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in his favor. Hannon v. Beard, 645 F.3d 45, 47-48 (1st Cir. 2011). If the Court's review of the record reveals evidence sufficient to support a judgment in favor of the non-moving party on one or more of her claims, then there is a trial-worthy controversy and summary judgment must be denied to the extent there are supported claims. Unsupported claims are properly dismissed. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

7

"A state and its subdivisions are under a substantive obligation imposed by the Due Process Clause of the Fourteenth Amendment to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health," Coscia v. Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011), or with "deliberate indifference to serious medical needs." Feeney v. Corr. Med. Servs., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)). Deliberate indifference requires "the complainant [to] prove that the defendants had a culpable state of mind and intended wantonly to inflict pain . . . or actual knowledge [or wilful blindness] of impending harm, easily preventable." DeRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (citations omitted). The concept of deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable," Feeney, 464 F.3d at 162 (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).

A trial-worthy claim requires that the plaintiff "satisfy both a subjective and objective inquiry." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011). The subjective inquiry calls for evidence that a defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The objective inquiry concerns the harm or need in question, which must involve "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" Id. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. Leavitt, 645 F.3d at 497; Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956

(1991)).  These two inquiries generally overlap and depend on similar evidence.  Leavitt, 645 F.3d at 498.

## DISCUSSION

Rollins's original theory when he filed the complaint and appeared for his deposition was apparently that Wentworth and Hackett had deliberately withheld his HIV medication by providing erratic treatment and not providing the proper dosage on a daily basis.  Once he obtained the Two Bridges medical records and learned of the "misspelling" of Norvir, his theory evolved.  He now is attempting to claim that an illegal prescription for an invalid drug named Norvair was placed into his medical records, compromising his entire regimen of treatment.  He has no evidence that Hackett or Wentworth wrote the illegal prescription and no reason to believe that they had some vested interest in altering his prescriptions to substitute a different drug.  In fact, his later-acquired theory about a substituted drug is nothing more than fanciful fiction, leaving the initial allegations that Wentworth and Hackett deliberately withheld Norvir, the prescribed medication, on occasion, and thereby caused his acute kidney injury, as the only theory of the case that is supported by the summary judgment record.  Rollins's penchant for depositing reams of exhibits with this court, ignoring the basic rules of civil procedure, and inventing implausible theories to fit with some new twist in the case is not a new technique.  He understands the court's basic rules and knows that his pleadings will be treated with some leniency because he is a pro se prisoner.  That fact does not mean that Rollins is free to invent facts or disregard common sense.[3]

---

[3] I note that Rollins is no stranger to bringing his disputes with correctional personnel to this court.  In 2003 he filed a case against state correctional authorities relating to medical concerns surrounding his diabetes.  Rollins v. Magnusson, 1:03-cv-00082-JAW.  In 2006 he filed another case regarding a claim of denial of access to the courts, Rollins v. Magnusson, 1:06-cv-00103-MJK, alleging that he lost his first case because of the way the prison system dealt with his ability to use its grievance process and access the appellate court in the first case.  In both cases Rollins appealed this court's award of summary judgment to the defendants and in both cases the First Circuit Court of Appeals affirmed the judgment.

9

Objectively, the human immunodeficiency virus is a serious medical condition. Even a lay person would recognize the need for medical intervention to manage the condition, and this record additionally establishes that a physician had mandated treatment for Rollins, eliminating any dispute as to whether or not Rollins in fact suffered from the serious condition. If a factfinder believed Rollins's deposition testimony that the nurses deliberately withheld his medication because they found his offense of conviction distasteful, the subjective component of an eighth amendment claim of deliberate indifference in the context of medical needs would also be satisfied. Defendants do not dispute either of these propositions. Instead, they seek summary judgment because Rollins has no admissible testimony, either through expert opinion or direct evidence, that the conduct he complains of relating to Wentworth and Hackett was the cause of any injury to him, let alone the acute kidney injury of which he complains.

In order for Rollins to proceed with his claim under the Eighth Amendment, he must show that the defendants' actions were "the cause in fact of the alleged constitutional deprivation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009). Granting summary judgment because Rollins has no evidence that the nurses' deliberately indifferent withholding of the proper treatment regimen exacerbated his pre-existing HIV condition could properly occur only in the rarest of instances. Gayton v. McCoy, 593 F.3d 610, 624 (7th Cir. 2010). Causation is almost always a question for the factfinder and rarely the subject of summary judgment. Defendants maintain that this case presents one of those extremely rare instances where there is absolutely no evidence of causation. I am forced to agree with them in the final analysis.

Rollins has presented evidence of his diagnosis and the treatment (or lack thereof) he received at the hands of Wentworth and Hackett, but those facts do not assist a factfinder in determining whether the medication doses actually supplied, whether it was mysteriously

10

substituted Norvair or haphazard doses of Norvir, exacerbated Rollins's kidney condition or otherwise harmed him, either short-term or long-term. Compare Leavitt, 645 F.3d at 501(recognizing that medical conditions that may cause serious harm in the future are actionable even if the inmate's current symptoms resolve, but describing a five-month denial of HIV medication and including supportive expert testimony). Rollins's complex condition is not like a broken bone where the obvious delay in treatment causes additional pain and suffering that a jury of lay people could easily infer from the testimony. In this case there is no way to know if the treatment at the hands of Wentworth and Hackett caused the acute kidney injury or exacerbated Rollins's condition in any fashion whatsoever.

Ultimately the case consists of Rollins's very disturbing allegations about the nurses' behavior and the fact that Rollins himself suffers from a serious medical condition. However, the causal connection between the asserted renal injury and the conduct simply has not been addressed with admissible evidence. Even if Rollins had counsel representing him and presented all of the available evidence, including the Maine Medical discharge summaries, in the proper format, there would be no available evidence regarding the cause of his injury being traceable to the nurses' conduct. In order to sustain that burden in a case of this nature with a plaintiff having as complex a medical history as Rollins, it would be necessary to produce expert testimony from a qualified medical expert, something that simply will not occur in the current case. Although this court has no choice but to grant the defendants' motion for summary judgment, it does not mean that it condones in any way the alleged conduct of the nurses, if they indeed conducted themselves as Rollins describes.

Finally, I turn to the one remaining defendant. Crisis and Counseling Centers, Inc. was named as a substitute defendant and service was accepted by the nurses' counsel on behalf of the

corporation. No further action has been taken in regard to the substituted party and it is technically not a party to the pending motion for summary judgment. Nevertheless, if the court accepts this recommendation regarding Hackett and Wentworth, the complaint as against the corporate entity should be dismissed as well for failure to state a claim.

Most cases agree that the standard for municipal liability under section 1983 would apply to entities such as Crisis and Counseling Centers, Inc. because it was contracted to fulfill a governmental responsibility. See Leavitt, 645 F.3d at 504 (applying municipal liability standard to claims against private medical services entity, but treating the issue as conceded); Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004) (treating corporate entities as municipal entities in the context of section 1983 prison-medical-care actions). As a general rule, municipal liability is precluded as a matter of law under section 1983 when the municipal employee cannot be proven to have inflicted any constitutional harm. City of Los Angeles v. Heller, 475 U.S. 796 (1986). However, a municipality may be held individually liable for its own constitutional deprivations in certain circumstances if a plaintiff can prove that a custom, policy, or practice of the municipality caused the injury. In the present case Rollins's allegations do not allege such a custom, policy or practice on the part of the corporate entity and so his complaint fails to state a claim against the corporation. Moreover, even if Rollins's complaint could be read as alleging a custom, policy, or practice claim, the same shortcoming in proof would exist concerning causation as it pertained to the corporation. For these reasons the action should be dismissed against Crisis and Counseling Centers, Inc. as well.

## CONCLUSION

Based on the foregoing, I recommend that the court grant the defendants' motion for summary judgment, dismiss as moot plaintiff's cross-motions, including ECF No. 70, and dismiss with prejudice the claims against Crisis and Counseling Centers, Inc.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 18, 2013                         /s/ Margaret J. Kravchuk
                                       U.S. Magistrate Judge